[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12574

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

*versus*

ORTAZ SHARP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cr-00450-LMM-1

_____

Before WILSON, LAGOA, Circuit Judges, and MARTINEZ,* District Judge.

MARTINEZ, District Judge:

The government appeals Ortaz Sharp's 110-month sentence for possessing a firearm as a convicted felon. It argues that the district court erred in determining that Sharp did not qualify for an Armed Career Criminal Act ("ACCA") enhancement pursuant to 18 U.S.C. § 924(e)(1). The two issues before us are (1) whether the government waived its argument that Sharp's prior conviction for making terroristic threats under O.C.G.A. § 16-11-37 qualifies as an ACCA predicate offense by failing to raise the argument before the district court because it was foreclosed by binding precedent; and (2) whether the Georgia robbery statute is a predicate offense under the ACCA. We find that the government did not waive its argument. As such, we need not determine whether a conviction for robbery under Georgia law is an ACCA predicate offense. Sharp's sentence is vacated, and the case is remanded for resentencing in accordance with this order.

## I.    BACKGROUND

Sharp was charged by information with a single count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He pled guilty to this charge pursuant to a plea

---

* Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

agreement. According to the presentence investigation report ("PSI") prepared by a probation officer, Sharp was subject to an enhanced sentence as an Armed Career Criminal under 18 U.S.C. § 924(e)(1). The PSI identified Sharp's prior Georgia convictions that qualified as violent offenses under the ACCA as: robbery by force, burglary, and aggravated battery. In addition, the PSI contained a laundry list of prior convictions, including a conviction for making terroristic threats, in violation of O.C.G.A. § 16-11-37.

At Sharp's sentencing hearing, the government argued that Sharp was an Armed Career Criminal under § 924(e)(1), subject to a mandatory sentence of 15 years. The government's request for the enhancement was premised on the same three convictions listed in the PSI, namely, Sharp's Georgia convictions for robbery, burglary, and aggravated battery. The government did not argue that Sharp's terroristic threats conviction was a violent offense under the elements clause of the ACCA because, at the time of sentencing, this court's decision in *United States v. Oliver* (*Oliver II*), 955 F.3d 887 (11th Cir. 2020) expressly held that a conviction under Georgia's terroristic threats statute did not qualify as an ACCA predicate offense. The district court did not touch on the issue, either.

After a thorough analysis, the district court determined that the Georgia robbery statute was indivisible and that it was not a predicate ACCA conviction. It ultimately found that Sharp was not an Armed Career Criminal under the ACCA because he did not have three qualifying predicate offenses. Sharp was therefore

sentenced to 110 months' imprisonment, followed by three years of supervised release.

Ten days after Sharp's sentencing, we vacated *Oliver II* and held that Georgia's terroristic threats statute, O.C.G.A. § 16-11-37, is divisible, and that a threat "to commit any crime of violence" qualifies as a predicate offense under the ACCA. *See United States v. Oliver* (*Oliver III*), 962 F.3d 1311, 1321 (11th Cir. 2020). In light of *Oliver III*, the government moved the district court to reconsider its finding that Sharp did not qualify as an Armed Career Criminal. According to the government, this intervening change in Circuit precedent merited reconsideration of the district court's ruling as to Sharp's status as an Armed Career Criminal.

Prior to the district court's ruling on the motion for reconsideration, the government filed its notice of appeal. The district court denied the motion for reconsideration without prejudice. In doing so, it stated that, while "the [g]overnment's position may be meritorious," the district court lacked jurisdiction to rule on the motion because the government filed a notice of appeal.[1]

This appeal ensued.

## II.    STANDARD OF REVIEW

We review *de novo* whether a prior conviction is a predicate offense within the meaning of the ACCA. *Oliver III*, 962 F.3d at

---

[1] The government does not appeal the district court's denial of its motion for reconsideration.

1316.  We have broad discretion to decide the limits of a remand for resentencing as may be just under the circumstances of the case. *United States v. Martinez*, 606 F.3d 1303, 1304 (11th Cir. 2010).

## III.    DISCUSSION

A defendant who is found guilty of possessing a firearm as a felon under 18 U.S.C. § 922(g)(1) can only be sentenced to a maximum of ten years, unless he has three or more prior convictions for "a violent felony or a serious drug offense, or both."  18 U.S.C. § 924(e)(1).  Under the ACCA, a "violent felony" is defined as any crime punishable by a term of imprisonment exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  *Id.* § 924(e)(2)(B)(i).  This provision is often referred to as the "elements clause."  *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).  If a defendant who violated § 922(g)(1) has at least three qualifying "violent felony" convictions, the ACCA prescribes a mandatory minimum sentence of fifteen years.  18 U.S.C.  § 924(e)(2)(B).  The district court is required to impose this minimum sentence regardless of whether the government seeks application of the enhancement.  *See United States v. Symington*, 781 F.3d 1308, 1313 (11th Cir. 2015).

To determine whether a prior conviction qualifies as a violent felony under the elements clause, we apply what has become known as the "categorical approach."  *Oliver III*, 962 F.3d at 1316. Under this approach, we examine only "'the elements of the statute of conviction,' not the 'specific conduct of [a] particular offender.'"

*United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)). "If the 'least of the acts criminalized' by the statute of conviction has an element requiring 'the use, attempted use, or threatened use of physical force against the person of another,' then the offense categorically qualifies as a violent felony under the ACCA's elements clause." *Oliver III*, 962 F.3d at 1316 (quoting *Davis*, 875 F.3d at 597). If not, our inquiry ends, "and the prior conviction does not count as a violent felony under the elements clause." *Id.*

The categorical approach, however, applies only when the statute in question is "indivisible." *Id.* at 1316–17. If a statute is "divisible," we apply the modified categorical approach. *Id.* Under the modified categorical approach, we consider a limited class of documents, including the indictment, jury instructions, or plea agreements and colloquy, to determine which of the multiple crimes listed in the alternatively phrased statute the defendant was convicted of committing. *Id.* at 1317. Because the modified categorical approach plays no role when a statute of conviction is indivisible, a court must first determine whether a statute is divisible before proceeding with an analysis under either approach. *Id.*

A "divisible" statute "lists multiple, alternative elements," which "effectively creates 'several different . . . crimes.'" *Descamps v. United States*, 570 U.S. 254, 264 (2013) (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)). "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248

(citing *Element*, *Black's Law Dictionary* (10th ed. 2014)).  By contrast, an "indivisible" statute lists "means," which are "various factual ways of committing some component of the offense . . . ."  *Id.* at 2249.

Following this framework, in *Oliver III* we held that Georgia's terroristic threats statute, O.C.G.A. § 16-11-37, is divisible.  *Oliver III*, 962 F.3d at 1321.  Applying the modified categorical approach, we determined that a threat "to commit any crime of violence" qualifies as a violent felony under the ACCA's elements clause.  *Id.* at 1320–21.  This ruling came only ten days after Sharp was sentenced.

The government argues on appeal that, pursuant to *Oliver III*, Sharp qualifies as an Armed Career Criminal because his conviction for terroristic threats is a violent felony under the ACCA. The government maintains that it was not required to argue that Sharp's terroristic threats conviction qualified as a predicate ACCA offense at the time of sentencing because the argument was foreclosed by *Oliver II*, which was binding precedent at the time.  Sharp responds that the government waived this argument by not objecting at sentencing to the terroristic threats conviction not being treated as an ACCA predicate.

It is undisputed that, at the time of sentencing, Sharp's Georgia terroristic threats conviction did not qualify as an ACCA predicate offense.  Thus, the question before us is whether the government may now rely on this conviction to argue that the ACCA enhancement applies to Sharp, when it failed to do so at the time of

sentencing because the argument was foreclosed by binding Circuit precedent.

Our Circuit has not yet addressed this question, but we find guidance in our decision in *Tribue v. United States*, 929 F.3d 1326 (11th Cir. 2019). The district court in *Tribue* denied relief under 28 U.S.C. § 2255 concluding that although Tribue's conviction for fleeing and eluding no longer qualified as a violent felony under the ACCA, he nevertheless qualified as an Armed Career Criminal because he still had three qualifying serious drug offenses. *Id.* at 1327. Tribue appealed this decision, primarily arguing that the government effectively waived reliance on the use of other convictions outside those identified as ACCA predicates in the PSI. *Id.* at 1332.

We rejected Tribue's argument for three reasons. First, we noted that at the original sentencing, Tribue admitted responsibility for all of the convictions listed in the PSI, so there was no dispute as to the factual existence of all the convictions. *Id.* at 1328–1329, 1332. Second, Tribue did not object to his ACCA enhancement. *Id.* Third, we reasoned that

> there is no requirement that the government prospectively address whether each and every conviction listed in the criminal history section of a PSI is an ACCA predicate in order to guard against potential future changes in the law and avoid later claims that it has waived use of those convictions as qualifying ACCA predicates. In other words, when there is no objection by the defendant to the three convictions

> identified as ACCA predicates, the government bears
> no burden to argue or prove alternative grounds to
> support the ACCA enhancement.

*Id.* We further noted that "the government [in *Tribue*] did not waive reliance on other convictions in the PSI as ACCA predicates simply by not objecting to the PSI on the grounds that Tribue had more qualifying convictions than the three" identified in the PSI as supporting the ACCA enhancement. *Id.*

Although not directly on point, we find the analysis in *Tribue* instructive. Indeed, the same underlying concerns presented in *Tribue* are reflected here. The government is not required to exhaustively address whether each conviction in the PSI qualifies as an ACCA predicate in order to preserve the argument and guard against an intervening change in the law. *Tribue*, 929 F.3d at 1332. While, unlike Tribue, Sharp objected to the ACCA enhancement at sentencing, at that time, the terroristic threats conviction did not qualify as a "violent felony" under the ACCA. It follows, then, that the government had no alternative grounds on which to rest its argument that Sharp qualified as an Armed Career Criminal, other than those it presented to the district court. Just as Sharp could not have expected that we would later hold that his terroristic threats conviction qualified as a violent felony, neither could the government. *See id.* We cannot require the government to make an argument that was not available to it at the time. Notwithstanding, our holding is limited to cases such as this one,

where an intervening change in the law occurs within the period of time allotted for filing a notice of appeal.

Without citing to any authority, Sharp suggests that if the government believed *Oliver II* was wrongly decided, it should have argued so before the district court. Sharp would effectively have us rule that the government must anticipate all potential changes in the law, or at the very least, argue before the district court that it does not agree with binding precedent. That is simply too far a stretch. We will not impose this burden on either the government or the district courts, who would be obliged to address a myriad of frivolous and futile objections.

We acknowledge that, in some instances, we have ruled that the government has waived reliance on the use of a conviction outside the three convictions identified as ACCA predicates in a PSI. *See United States v. Canty*, 570 F.3d 1251 (11th Cir. 2009); *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253 (11th Cir. 2013), *overruled on other grounds by McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc); *United States v. Petite*, 703 F.3d 1290 (11th Cir. 2013). Yet, these cases are materially distinguishable from the circumstances presented here. In those cases, the government's reliance on the additional conviction as an ACCA predicate was not foreclosed by binding precedent at the time of sentencing. In other words, the government could have argued that the defendant's other convictions qualified as ACCA predicates but failed to do so. Conversely, here, the argument was not available to the government. This alone suffices to

support a finding against waiver.  But, notably, unlike in *Bryant*, the district court here "did not review all of [Sharp's] convictions, much less make any finding about all of them."  *See Tribue*, 929 F.3d at 1334.  The district court only made findings as to the convictions listed in the PSI as ACCA predicates, and primarily focused on Sharp's conviction for robbery by force.

Accordingly, we must remand this case to the district court to address whether Sharp qualifies as an Armed Career Criminal in light of *Oliver III*.  On remand, the district court must make factual findings about Sharp's conviction under Georgia's terroristic threats statute, and whether this conviction qualifies as an ACCA predicate.  Because the district court did not have the opportunity to review evidence as to Sharp's terroristic threats conviction, on remand, both the government and Sharp may submit evidence regarding the same.  *See United States v. Washington*, 714 F.3d 1358, 1362 (11th Cir. 2013) (explaining that this court has discretion to permit the government to present evidence at resentencing in situations where the issue was not previously before the district court); *Martinez*, 606 F.3d at 1305 ("[A] reviewing panel may remand for limited purposes, for broader purposes, or to permit further evidence to be presented on the second round even when a party has been given an opportunity but fails to do so in the first round.").

## IV.    CONCLUSION

We hold that the government did not waive its argument that Sharp's conviction qualified as a predicate crime of violence

under the ACCA, where, as here, the argument was foreclosed by binding precedent at the time of sentencing and the change in law occurred within the time to file a notice of appeal. Because we find that the government did not waive this argument, we need not address whether the Georgia robbery statute constitutes an ACCA predicate offense. Based on the foregoing, Sharp's sentence is vacated, and the case is remanded for resentencing consistent with this opinion.

**REVERSED IN PART AND REMANDED FOR RESENTENCING.**